# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD TAIKWAN JULIAN MULLINS,<br><br>    Plaintiff,<br><br>    v.<br><br>L. VILLASENOR, et al.,<br><br>    Defendants.<br>_____/ | CASE NO. 1:09-CV-02045-LJO-DLB PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

**I.      Background**

Plaintiff Edward Taikwan Julian Mullins("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding against Defendants L. Villasenor, G. Zinani, R. Miller, and Heberling for retaliation in violation of the First Amendment. Pending before the Court is Defendants' motion for summary judgment, filed September 29, 2011. Defs.' Mot. Summ. J., Doc. 64. Plaintiff filed a statement of non-opposition on October 13, 2011.[1] The matter is submitted pursuant to Local Rule 230(l).

**II.     Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on July 21, 2010. Second Informational Order, Doc. 28; *see Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

**III.    Statement Of Facts**[2]

Plaintiff is an inmate in the custody of the CDCR. Pl. Dep. Vol. II, 212:15-17. At all times relevant to this suit, Plaintiff was incarcerated at the California Substance Abuse and Treatment Facility ("SATF") in Corcoran, California. Currently, Plaintiff is incarcerated at California State Prison Lancaster. Pl. Dep. Vol. II, 212:15-17.

---

[2] The following statement of facts is taken from Defendants' statement of undisputed facts. All facts are considered undisputed, unless otherwise noted. The Court will consider only those facts and evidence that are relevant to resolving the motion for summary judgment.

3

1      Defendant G. Zinani is employed by CDCR as a Correctional Sergeant at SATF.  G.
2 Zinani Decl. ¶ 1.  Defendant L. Villasenor is a Licensed Vocational Nurse at SATF.  Villasenor
3 Decl. ¶ 1.  Defendant R. Miller is a Correctional Officer at SATF.  Miller Decl. ¶ 1.  Defendant
4 Heberling is a Correctional Sergeant at SATF.  Heberling Decl. at ¶ 1.  On December 11, 2008,
5 Plaintiff filed a grievance against Defendant Villasenor.  First Am. Compl. ¶ 20.
6      On January 20, 2009, Defendant Villasenor found a letter addressed to her ("January 20,
7 2009 letter").  Villasenor Decl. ¶ 3.  The January 20, 2009 letter said, "How you doing L. Villgs.
8 I hope you don't turn me into the pigs. But you know I love you. I want to make love to you. I
9 want to suck your pussy. Make love to you all nigte long baby. You winked at me the other day.
10 You know me. Write me back. Edward Mullins. You can find my number if you like me to. I
11 love you."  *Id.*, Ex. A.
12      Defendant Villasenor did not prepare the January 20, 2009 letter.  *Id.* ¶ 4.  Defendant
13 Villasenor does not have any personal knowledge regarding the author of the January 20, 2009
14 letter.  *Id.*  Because the January 20, 2009 letter is purportedly signed by inmate Plaintiff,
15 Defendant Villasenor believed that Plaintiff prepared and submitted the letter.  *Id.*  On January
16 20, 2009, Defendant Villasenor did not believe, or have any reason to believe, that anyone other
17 than Plaintiff prepared the letter.  *Id.*
18      Prison regulations prohibit inmates from sexually propositioning staff.  *Id.* ¶ 5.  Prison
19 regulations require staff to report all rules violations by an inmate.  *Id.*  Defendant Villasenor was
20 concerned for her safety because the January 20, 2009 letter sexually propositioned her with
21 graphic language.  *Id.* ¶¶ 5, 6.
22      On January 20, 2009, Villasenor contacted a supervisor, Correctional Sergeant M.
23 Pilkerton, and provided her with the letter in order to report a rules violation by Plaintiff.  *Id.* ¶ 5.
24 Except for providing the January 20, 2009 letter to Pilkerton, Defendant Villasenor played no
25 role in the investigation into the January 20, 2009 letter or Plaintiff' housing assignment at
26 SATF.  *Id.* ¶ 7.  Defendant Villasenor did not have the authority to transfer Plaintiff to the
27 Administrative Segregation Unit ("ASU") at SATF or another yard.  *Id.*  Prior to January 20,
28 2009, Plaintiff lived in Facility D at SATF.  Carson Decl. 2.

On January 20, 2009, Lieutenant T. Akin ordered Plaintiff placed in the ASU pending an investigation into whether Plaintiff was the author of the letter. *Id.* On January 29, 2009, Plaintiff participated in an Institutional Classification Committee ("ICC") meeting regarding the January 20, 2009 letter. The committee decided to retain Plaintiff in the ASU pending the outcome of an investigation into the January 20, 2009 letter. *Id.* at 3-4; Pl. Dep. Vol. II, 111:23-112:5. Defendants did not participate in the January 29, 2009 ICC meeting. Carson Decl. 3; Villasenor Decl. ¶ 7.

On February 24, 2009, the Investigative Services Unit at SATF determined they could not identify the author of the January 20, 2009 letter. However, the investigation revealed evidence that Plaintiff had a confidential enemy in Facility D, and Plaintiff was retained in the ASU until prison officials could determine where Plaintiff should be housed. Carson Decl. 3- 5.

After prison officials investigated the January 20, 2009 letter, Defendant Villasenor did not object to Plaintiff returning to Facility D. Villasenor Decl. ¶ 8. On July 9, 2009, Plaintiff returned to Facility D. Carson Decl. 5-6. Defendant Villasenor did not take any action against Plaintiff based upon any grievances that he filed. Villasenor Decl. ¶ 9. Defendant Villasenor did not form an agreement with anyone to take adverse action against Plaintiff. *Id.* ¶ 10. Defendant Villasenor is not aware of anyone that formed an agreement to take adverse action against Plaintiff. *Id.* ¶ 11. Plaintiff does not have any personal knowledge regarding the author of the January 20, 2009 letter. Pl. Dep. Vol. I, 47:8-12. Plaintiff suspects that his former cellmate, inmate Elmore, is the author of the January 20, 2009 letter. *Id.*, Vol. II., 180:14-25.

On January 28, 2010, Plaintiff had an argument with Defendant G. Zinani. Pl. Dep. Vol. II, 160:6-9. On January 28, 2010, Plaintiff filed a grievance against Defendant G. Zinani regarding the argument. *Id.* On February 15, 2010, an inmate (the reporting inmate) warned Defendant Miller that inmate Plaintiff made threatening statements against her. Defendant Miller was advised that Plaintiff told the reporting inmate that he wanted to stab Defendant Miller. Miller Decl. ¶ 3.

In order to prevent an assault and ensure the safety and security of the institution, Defendant Miller notified her supervisor, Defendant Heberling, of the reporting inmate's

5

statement. *Id.* ¶ 4. In order to prevent an assault and ensure the safety and security of the institution, Defendant Miller notified her supervisor, Defendant Heberling, of the reporting inmate's statement. *Id.* In order to protect Defendant Miller and assess the threat of harm, Defendant Heberling ordered her staff to determine whether Plaintiff had been released for dinner, and Defendant Heberling was informed that Plaintiff had been released. Heberling Decl. ¶ 4.

In order to prevent Plaintiff from encountering Defendant Miller and ensure institutional safety and security, Defendant Heberling ordered Plaintiff placed in a holding cell. *Id.* ¶ 5. Defendant Heberling interviewed the reporting inmate, who said that he spoke with Plaintiff earlier that day, and when the reporting inmate said Defendant Miller was a good officer, "Mullins became enraged and stated, 'I hate the white bitch. I'm going to stab that white bitch. I hate this yard. I'm going to stab her and get off this yard.'" *Id.* ¶ 7.

Defendant Heberling informed her supervisor, Lieutenant Perez, of the reporting inmate's statements. *Id.* ¶ 8. On February 15, 2010, Lieutenant J. Perez ordered Plaintiff placed in ASU pending an investigation into his possible involvement in conspiring to assault staff. *Id.*; Carson Decl. 7. Except for advising Defendant Heberling of the reporting inmate's statement, Defendant Miller played no role in the investigation into Plaintiff's statement on February 15, 2010. Miller Decl. ¶ 5. Plaintiff does not have any personal knowledge regarding Defendants Heberling or Miller's conduct on February 15, 2010. Pl. Dep. Vol. IV, 84:22-85:3, 85:25-86:4. On February 15, 2010, Defendant Miller worked in Facility D of SATF. Miller Decl. ¶ 2. On February 15, 2010, Defendant Heberling worked in Facility D of SATF. Heberling Decl. ¶ 3.

On February 15, 2010, Plaintiff was transferred from Facility D to the ASU. Pl. Dep. Vol. IV, 70:1-6. Plaintiff's property was inventoried by Facility D staff and transported to the ASU. Heberling Decl. ¶ 12. The inventory of Plaintiff's property indicates the Facility D staff that processed Plaintiff's property provided the ASU staff with a box of his legal property. Pl. Dep. Vol. II, 228:1-17. After Plaintiff's property arrived in the ASU, the staff from Facility D would not have played any role in the processing of his property. Instead, Plaintiff's property was maintained and stored by the ASU staff, who also determined the types and amounts of property

6

he may possess pursuant to prison regulations as well as when he received the approved property. Heberling Decl. ¶ 12.  At an unspecified time, an unspecified individual lost Plaintiff's box of legal property.  Pl. Dep. Vol. IV, 68:6-17, 73:1-4.  Plaintiff does not have any personal knowledge regarding the processing of his property on February 15, 2010.  *Id.* at 69:16-19, 70:1-6, 71:14-17.  Defendant Miller did not dispose of or mishandle any of Plaintiff's property. Miller Decl. ¶ 7.  Miller played no role in the processing of Plaintiff's property in the Administrative Segregation Unit at SATF.  *Id.* ¶ 8.

On February 15, 2010, Defendant Miller was not aware of any grievances, lawsuits, or other complaints by Plaintiff against Defendants Miller, Heberling, or Licensed Vocational Nurse Villasenor.  *Id.* ¶ 6.  Defendant Miller did not take any action against Plaintiff based upon any grievances or lawsuits that he filed.  *Id.* ¶ 9.  Defendant Miller is not aware of anyone that wrongfully deprived Plaintiff of any property.  *Id.* ¶ 10.  Defendant Miller did not form an agreement with anyone to take adverse action against Plaintiff.  *Id.* ¶ 11. Defendant Miller is not aware of anyone that formed an agreement to take adverse action against Plaintiff.  *Id.* ¶ 12.

Defendant Heberling did not dispose of or mishandle any of Plaintiff's property. Heberling Decl. ¶ 14.  Defendant Heberling played no role in the processing of Plaintiff's property in ASU.  *Id.* ¶ 15.  On February 15, 2010, Defendant Heberling was not aware of any grievances, lawsuits, or other complaints by Plaintiff against Defendants Heberling, Miller, or Licensed Vocational Nurse Villasenor.  *Id.* ¶ 16.  Defendant Heberling did not take any action against Plaintiff based upon any grievances or lawsuits that he filed.  *Id.*  Defendant Heberling is not aware of anyone that wrongfully deprived Plaintiff of any property.  *Id.* ¶ 17.  Defendant Heberling did not form an agreement with anyone to take adverse action against Plaintiff.  *Id.* ¶ 18.  Defendant  Heberling is not aware of anyone that formed an agreement to take adverse action against Plaintiff.  *Id.* ¶ 19.

Plaintiff attempted to file several inmate grievances regarding Defendants Heberling and Miller's alleged conduct on February 15, 2010.  Plaintiff contends that Defendant G. Zinani is an Appeals Coordinator at SATF and Defendant G. Zinani refused to process Plaintiff's grievances against Defendants Heberling and Miller.  Pl. Dep. Vol. II, 163:2-15, 165:5-6, 167:22-25,

170:1-18; First Am. Compl. ¶ 9.  Defendant G. Zinani did not refuse to process any of Plaintiff's grievances.  G. Zinani Decl. ¶ 5.  Defendant G. Zinani played no role in the processing Plaintiff's grievances against Defendants Heberling or Miller.  *Id.* ¶¶ 3-5.  Defendant G. Zinani is the Sergeant for the ASU.  *Id.* ¶ 2.  Defendant G. Zinani is responsible for responding to inmate grievances that concern allegations against him.  However, Defendant G. Zinani does not play any role in the processing of other grievances at SATF.  *Id.* Decl. ¶ 1.  Defendant G. Zinani is male. *Id.* ¶ 6.  Defendant G. Zinani's wife, L. Zinani, is an Appeals Coordinator at SATF.  *Id.* ¶ 7.  L. Zinani is responsible for processing grievances at SATF.  *Id.*  L. Zinani is female.  *Id.*  Defendant G. Zinani did not take any action against Plaintiff based upon any grievances that he filed.  *Id.* ¶ 12.  Defendant G. Zinani is not aware of anyone that wrongfully deprived Plaintiff of any property.  *Id.* ¶ 13.  Defendant G. Zinani did not form an agreement with anyone to take adverse action against Plaintiff.  *Id.* ¶ 14.  Defendant G. Zinani is not aware of anyone that formed an agreement to take adverse action against Plaintiff.  *Id.* ¶ 15.  Defendant G. Zinani played no role in Plaintiff's hunger strike.  *Id.* ¶¶ 8, 10.[3]

Plaintiff's missing box of property contained a grievance that Plaintiff filed against Wenciker and two declarations from *Mullins v. Wenciker*, U.S.D.C., E.D., Case No. 1:07-cv-0108.  *Id.* at 245:5-22; Vol. III, 283:1-19.  In the *Wenciker* case, Plaintiff s claims that Defendant Wenciker discarded Plaintiff's property in retaliation for Plaintiff having filed an inmate grievance.  Req. Judicial Not. Ex. C p. 6.[4]  On March 28, 2011, Defendant Wenciker moved for summary judgment on the ground that he disposed of Plaintiff's property pursuant to prison regulations and he is also entitled to qualified immunity from suit.  Req. Judicial Not. Ex. A.  On July 21, 2011, the Court ordered Plaintiff to oppose Wenciker's motion for summary judgment by August 15, 2011.  Req. Judicial Not. Ex. B.  Plaintiff prepared his opposition to Wenciker's

---

[3] The Court omits Defendants' other undisputed facts regarding Plaintiff's hunger strike, as it is not pertinent to any claim in this action.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, Defendants request judicial notice of Plaintiff's action, *Mullins v. Wenciker*, 1:07-cv-108, (E. D. Cal.).  That action was dismissed on November 30, 2011.  The Court takes judicial notice of *Mullins v. Wenciker*.

motion for summary judgment over approximately four days. Plaintiff did not put "too much thought" into his opposition and there was "probably more [he] could have done." Pl. Dep. Vol. IV, 20-25, 22:3-5, 33:25-34:6, 37:19-23, 38:6-22, 41:15.

On July 31, 2011, Plaintiff served his opposition to Wenciker's motion for summary judgment. Req. Judicial Not. Ex. C p. 29. In his opposition, Plaintiff argues Wenciker knew that Plaintiff's property should not have been disposed of under prison regulations. Specifically, Plaintiff's contends that Wenciker said, "Now I'm gonna dispose all your property" on April 24, 2006, and the statement shows that Wenciker knew that Plaintiff's property was not subject to disposal under prison regulations. Req. Judicial Not. Ex. C pp. 6, 12. In his opposition, Plaintiff prepared a declaration that states he heard Wenciker say,"Now I'm gonna dispose all your property" on April 24, 2006. Req. Judicial Not. Ex. C pp. 11- 12. Plaintiff's opposition to Wenciker's motion for summary judgment also includes a declaration from inmate Kentrall Scott, which claims that Wenciker said, "Now I'm gonna dispose all your property" on April 24, 2006. Req. Judicial Not. Ex. C p. 21. Plaintiff's missing grievance did not affect his opposition to Wenciker's motion for summary judgment. Pl. Dep. Vol. IV, 54:1-5, 55:1-3.

**IV.   Analysis**

    **A.   Legal Standard**

Retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see Brodheim v. Cry*, 584 F.3d 1263, 1269 n.3 (9th Cir. 2009) (plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claim).

Defendants contend that Plaintiff cannot demonstrate a triable issue of material fact as to

his claims against any Defendants.  The Court will analyze each claim against each Defendant.

### B. Defendant Villasenor

Plaintiff alleged that Defendant Villasenor allegedly made a false accusation against Plaintiff of writing a sexually graphic letter, in retaliation for his filing an inmate grievance against her.  Screening Order 5, Doc. 22.  Defendant Villasenor contends that her actions were in furtherance of a legitimate penological goal.  Defs.' Mem. P. & A. 7:13-8:5.  Based on the undisputed facts, there is not triable issue of material fact as to his claim against Defendant Villasenor.  Defendant Villasenor did not write the letter.  Based on prison regulations, unwanted sexual advances are a threat to the safety and security of the institution, a legitimate penological purpose.  Thus, Defendant Villasenor's actions in reporting this letter to her supervisor served a legitimate penological purpose.  Accordingly, there is no triable issue of material fact as to Plaintiff's retaliation claim against Defendant Villasenor.  Summary judgment should be entered in favor of Defendant Villasenor and against Plaintiff as a matter of law.

### C. Defendant G. Zanini

Plaintiff alleged that Defendant G. Zanini took adverse action against Plaintiff for writing inmate grievances by refusing to process the grievances.  Screening Order 5.  Defendant G. Zinani contends that he took no adverse action against Plaintiff.   Defs.' Mem. P. & A. 8:8-10:3.  Based on the undisputed facts, Defendant G. Zanini is not an appeals coordinator, rather his wife, L. Zinani, is.  L. Zinani is not a Defendant in this action.  Thus, Defendant G. Zanini took no adverse action against Plaintiff.  Accordingly, there is no triable issue of material fact as to Plaintiff's retaliation claim against Defendant G. Zinani.  Summary judgment should be entered in favor of Defendant G. Zinani and against Plaintiff as a matter of law.

### D. Defendants Heberling and Miller

Plaintiff alleged that Defendant Heberling ordered false rules violation reports against Plaintiff for his filing of grievances and lawsuits, that Defendant Miller wrote false rules violation reports against Plaintiff for a retaliatory purpose, and that Defendants Heberling and Miller stole Plaintiff's legal property.  Screening Order 5.  Defendants Heberling and Miller contend that their conduct was in furtherance of a legitimate penological goal, and was not done

because of any protected First Amendment conduct by Plaintiff. Defs.' Mem. P. & A. 10:7-27.

Based on the undisputed facts, Defendnat Miller was advised that Plaintiff wanted to stab Defendant Miller. As a result, Defendant Miller notified her supervisor, Defendant Heberling, who ordered that Plaintiff be placed in a holding cell temporarily in order to prevent a possible assault. Thus, Defendants Heberling and Miller's actions served a legitimate penological purpose of mitigating threats to institutional safety and security. Additionally, there is no showing that Defendants Miller and Heberling took adverse action against Plaintiff for any protected conduct. Defendants were also not responsible for the disposition of Plaintiff's legal property.[5] Accordingly, there is no triable issue of material fact as to Plaintiff's retaliation claim against Defendants Heberling and Miller. Summary judgment should be entered in favor of Defendants Heberling and Miller and against Plaintiff as a matter of law.

### E. Qualified Immunity

Because the Court finds that summary judgment should be granted as to all Defendants, the Court declines to address Defendants' arguments regarding qualified immunity.

## V. Conclusion And Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed September 29, 2011, should be granted;

2. Summary judgment should be granted in favor of all Defendants and against Plaintiff; and

3. Judgment should be entered accordingly.

---

[5] Defendants also address a possible access to the courts claim that Plaintiff may have raised, contending that Plaintiff was not prejudiced by the loss of his legal property as to his case, *Mullins v. Wenciker*. Defs.' Mem. P. & A. 11:4-12:22. Active interference with an inmate's ability to access the courts may support a claim. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102-03 (9th Cir. 2011). The Court did not find that Plaintiff had stated a claim for denial of access to the courts. *See* Screening Order, Doc. 22. Even if there was such a claim, there is no triable issue of material fact. Defendants Heberling and Miller were not involved in the loss of Plaintiff's legal property. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (in order for a person acting under color of state law to be liable under 42 U.S.C. § 1983 there must be a showing of personal participation in the alleged rights deprivation).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within **fourteen (14) days** after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

   IT IS SO ORDERED.

   **Dated:     February 21, 2012**                    **/s/ Dennis L. Beck**
                                                       UNITED STATES MAGISTRATE JUDGE